### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### HATTIESBURG DIVISION

**TRESS LAMAR DUKES**                                                    **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 2:10cv252-KS-MTP**

**MICHAEL J. ASTRUE,**                                          **DEFENDANT**
**Commissioner of Social Security**

### REPORT AND RECOMMENDATION

Plaintiff Tress Lamar Dukes brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner denying his applications for a period of

disability and supplemental security income.  The matter is before the Court on the

Commissioner's [10] Motion to Affirm his decision and on Plaintiff's [9] Motion for Reversal

or, alternatively, for Remand to the Commissioner for Further Proceedings.[1] Having considered

the pleadings, the transcript of the record, and the applicable law, and being thus fully advised in

the premises, the undersigned recommends that Plaintiff's [9] motion be granted in part and

denied in part, that the Commissioner's [10] motion be denied, and that the Commissioner's

decision be **REMANDED** for further proceedings.

### PROCEDURAL HISTORY

Plaintiff applied for supplemental security income ("SSI") under the Social Security Act

on July 21, 2006.  (Tr. 150-153).[2]  Plaintiff received a notice of unfavorable decision from

---

[1]Plaintiff filed a [9] Brief in Support of Complaint asking for this relief, but did not file a corresponding motion.  The Court will construe the [9] Brief as a motion.  The Commissioner's [10] Motion to Affirm addresses the arguments raised in Plaintiff's motion.

[2]The transcript references coincide with the page numbers on the lower right hand corner of the administrative record, which is docket entry [8].

Administrative Law Judge ("ALJ") Robert C. Allen dated September 2, 2008.  (Tr. 77-87).

By notice dated February 27, 2009, the Appeals Council granted Plaintiff's request for review, vacated the original hearing decision, and remanded the case to an ALJ to resolve the following issue:

> The record is unclear regarding the nature and severity of the claimant's cognitive functioning, and specifically his literacy.  The claimant testified that he cannot read or write, with the exception of his name.  The claimant's Disability Report . . . also notes the claimant to be illiterate.  The hearing decision, however, found that the claimant is literate.  An attempt to obtain school records was unsuccessful.  Further development is needed to adequately assess the claimant's literacy and its effects on the claimant's ability to perform work-related tasks.  If the claimant is illiterate (with unskilled past relevant work and a residual functional capacity for light work), the Medical-Vocational Rule 202.09 could potentially apply.  If applicable, this rule would indicate a finding of "disabled."

> The record contains little current medical evidence regarding the claimant's physical impairments.  There is one documented physical examination dated May 30, 2008 . . ., which indicates that the claimant received treatment for chronic neck, back, leg, and hand pain.  Most of the remaining evidence in the record is from 2006.  Further development of the record is needed to adequately address the claimant's physical impairments.

> A vocational expert was present at the hearing and testified that the claimant's past relevant work was performed at the heavy exertional level.  He did not address the skill level of the claimant's past relevant work (skilled, semi-skilled, unskilled) or if the claimant has acquired transferable skills.  Further evaluation of the claimant's past relevant work is needed to accurately determine his skills and ability to perform other work in the national economy.

(Tr. 90-91).  The ALJ was instructed to:

> Obtain additional evidence concerning the claimant's literacy, degenerative disc disease, degenerative joint disease, and history of fracture to both legs in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 416.912-913).  The additional evidence may include a consultative orthopedic examination and a mental status examination with psychological testing and medical source statements about what the claimant can still do despite the impairments.

> Obtain supplemental evidence from a vocational expert to clarify the effect of the

assessed limitations on the claimant's occupational base (Social Security Ruling 83-14 and *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)).  The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.  The [ALJ] will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 416.9660).  Further, before relying on the vocational expert evidence the [ALJ] will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).  The vocational expert should also indicate the skill level of the claimant's past relevant work, and if appropriate, determine whether the claimant has acquired any skills that are transferable (with very little, if any, vocational adjustment) to other occupations under the guidelines in Social Security Ruling 82-41.

(Tr. 91).

Upon remand, the ALJ conducted a hearing on May 27, 2009.  (Tr. 18-28).  At the end of the hearing, the ALJ indicated that comprehensive mental health and orthopedic exams would be conducted before he rendered a decision.  (Tr. 23, 27).  The former was performed July 2, 2009 by Victor M. D'Ilio, Ph.D., Psychologist, (Tr. 278-284), and the latter on August 4, 2009 by Cleve E. Johnson, M.D., of the Laurel Bone and Joint Clinic in Laurel, Mississippi.  (Tr. 286-292).

On October 8, 2009, the ALJ issued an unfavorable decision. (Tr. 6-17).  Plaintiff requested review of this hearing decision.  (Tr. 4-5).  By notice dated August 27, 2010, the Appeals Council "found no reason under our rules to review the [ALJ's] decision.  Therefore, we have denied your request for review.  This means that the [ALJ's] decision is the final decision of the Commissioner of Social Security in your case."  (Tr. 1).  Plaintiff filed a [1] complaint in this Court on October 21, 2010.[3]

---

[3]Plaintiff was represented by a non-lawyer representative in the Social Security administrative process.  (Tr. 104).  He is represented by legal counsel in this cause of action.

## FACTUAL/MEDICAL HISTORY

Plaintiff was born November 23, 1956.  (Tr. 150).  He completed the 11th grade in Fruitdale, Alabama.  (Tr. 160).  His primary work history was as a saw hand for logging companies cutting logs and performing trim work.  (Tr. 162-163).  Plaintiff injured his back when a tree fell on him in 1989, and eventually returned to work as a logger.  (Tr. 13).  He was injured again in 1997, which is when he claims his current disability began.  (Tr. 13, 150).  Both his legs, as well as his collarbone and some ribs, were broken.  (Tr. 250).

Plaintiff was treated by Dr. Jatinder Singh beginning in 2000.  (Tr. 212-249).  He treated him for chronic back, neck, leg, and hand pain.  Dr. Singh diagnosed Plaintiff with degenerative joint disease, degenerative disc disease, and post traumatic arthritis.  He treated Plaintiff with medication.  In his discussion of Dr. Singh's records, the ALJ acknowledged that Dr. Singh treated Plaintiff for hand pain which improved with treatment, and that x-rays of Plaintiff's hands in 2006 revealed moderate to moderately severe degenerative changes of the left hand and minimal degenerative changes of the right hand.  (Tr. 14).[4]

Plaintiff was also treated in 2004 by Dr. Michael Patterson of Southern Bone and Joint Specialists for his neck and back conditions, particularly degenerative disc disease.  Dr. Patterson believed that surgery might improve Plaintiff's condition, but Plaintiff decided against it.  Dr. Patterson treated Plaintiff with a lumbar epidural steroid injection.  In November 2004 Dr. Patterson gave Plaintiff an 8% whole person impairment rating and believed it reasonable that he could return to work at a light level.  (Tr. 207-210).

---

[4]Laboratory tests performed for Dr. Singh in February 2006 were positive for cannabinoids and cocaine and in March 2006 positive for cocaine.  (Tr. 13, 248-249).

4

Dr. Nancy Weible performed a consultative exam on Plaintiff in September 2006.  She noted his chronic back, neck, and legs pain.  At the time of examination, Plaintiff's hands were stiff and it was hard for him to do fine finger movements.  He had poor grip in both hands, and his knees and ankles hurt.  Dr. Weible's assessment was a remote history of fractured knees, generalized degenerative joint disease and degenerative disc disease, particularly of the neck, hands,[5] and knees, and past history of alcohol and tobacco abuse.  (Tr. 250-253).

Dr. William Hand performed medical consultant reviews on Plaintiff in October and November 2006.  In October Dr. Hand found full range of motion in Plaintiff's hips and knees, with stiffness in his neck.  There was no neurological deficit and Plaintiff has had no spine surgery.  Plaintiff had some stiffness to some degree in his hands with some weakness of grip and manipulation.  He ordered x-rays of both hands.  According to Dr. Hand, the lower extremities were "not severe," and x-rays of the lumbar spine were unremarkable and "not severe."  The healed clavicle fracture was not severe.  (Tr. 255).

The x-rays of the hands ordered by Dr. Hand showed minimal degenerative changes of the right hand and moderately severe degenerative changes of the left 2nd metacarpophalangeal joint with moderate degenerative changes to the left 1st metacarpophalangeal joint.  There were no fractures or dislocations.  (Tr. 256-257).

In November Dr. Hand had the benefit of the x-rays.  At that time Plaintiff appeared to have good use of his hands.  Dr. Hand saw no severe problem.  (Tr. 258).[6]

---

[5]The bilateral grip strength was 3 on a scale of 5, and he could easily pull the end of a reflex hammer out of either hand.

[6]Dr. Louis Saddler performed a medical consultant review in March 2007, and "[a]gree[d] with prior rating."  (Tr. 259).

Dr. Victor D'Ilio, Ph.D. in psychology, performed the consultative psychological evaluation following the hearing upon remand. Dr. D'Ilio noted that Plaintiff indicated he had been sent to the Mississippi Penitentiary in Parchman for 3 years for selling drugs.[7] Dr. D'Ilio's summary included a regular education history and no psychiatric history. The mental status evaluation was unremarkable, with Plaintiff reporting that he had a history of being arrested for alcohol problems as well as for selling drugs. Plaintiff was able to read everything on a 15 item test, but was unable to reproduce the 15 item test. Dr. D'Ilio did not feel that valid or reliable sources could be found during his examination. Diagnostic impressions included the possibility of malingering, and the need to rule out ongoing alcohol abuse as opposed to addiction. Dr. D'Ilio believed it possible that Plaintiff may have been intoxicated at his examination, along with some early alcohol dementia which could explain the way Plaintiff presented himself at the examination. The presentation suggested that Plaintiff would have difficulties performing routine and repetitive tasks, interacting with co-workers, receiving supervision, and maintaining attention and concentration.[8] He did not know to what degree this was due to alcohol and prescription medications. Dr. D'Ilio did not know the prognosis over the next 12 months, and recommended that someone be appointed to handle funds for Plaintiff. (Tr. 280).

Plaintiff reported to Dr. D'Ilio that he is usually able to perform routine hygiene and grooming activities independently such as bathing, dressing, eating, toileting, and general health

---

[7]Plaintiff's application for benefits denied conviction of a felony or an attempt to commit a felony. (Tr. 151).

[8]At another point in the report, Dr. D'Ilio indicated Plaintiff's attention and concentration were good (Tr. 280), and that his clinical presentation suggested that he possesses basic communication and social skills which would allow him to interact with others so that his needs could be met. (Tr. 279).

6

care, although he occasionally needs help getting in and out of the tub due to his limitations with his legs and arms.  (Tr. 279).  The mental status evaluation was unremarkable.  (Tr. 280).

Dr. Cleveland Johnson performed the consultative orthopedic examination on Plaintiff following the hearing upon remand.  Plaintiff stated the reason for his inability to work was pain in his neck, back, and pelvis, and he complained of pain in his neck, low back, pelvis and both legs, and some numbness in his feet.  There were flexion problems in his left index finger.  Dr. Johnson's physical examination found a 5/5 grip in both hands, no sensory changes, and full extension to 30 degrees flexion of the MP joint of his left index finger.  He appeared to have adequate fine and gross manipulation in both hands.  (Tr. 286-287).

Dr. Johnson found Plaintiff to allow 60 degrees of forward flexion, 20 degrees of extension, 20 degrees of lateral flexion and rotation both right and left of the dorsolumbar spine. The pelvis was level.  Straight leg raising test was negative in the sitting position bilaterally, and positive at 70 degrees bilaterally supine.  Plaintiff had full motion of his hips, knees, and ankles. He walked with no external support or limp, had no sensory changes in the lower extremities, and good pulses in both feet.  Dr. Johnson's impressions were clinically healed fractures both tibias with retained intramedullary nails, history of minimal fractures of the dorsal and lumbar spine, an old recovered fracture of the left scapula with history of brachial plexus stretch injury, an old laceration of the left index finger MP joint with residual lack of flexion beyond 30 degrees, and chronic abscesses.  (Tr. 287-288).

Dr. Johnson determined that Plaintiff can stand/walk 6 to 7 hours a day and lift 10 pounds.  He can sit without affect, but cannot climb (no heights).   His handling, pushing, and pulling were affected (no moving machinery).  Dr. Johnson stated that the limitations he found

7

were not normally expected from the type and severity of the diagnosis in Plaintiff's case.  The

diagnoses were confirmed by objective findings.  Dr. Johnson based his opinion primarily on the

Plaintiff's subjective complaints.  (Tr. 289-291).[9]

## BURDEN OF PROOF

In *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988), the Fifth Circuit detailed the

shifting burden of proof that applies to the disability determination:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act.  Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled.  In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):
>
> 1.  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
> 2.  An individual who does not have a 'severe impairment' will not be found to be disabled.
> 3.  An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
> 4.  If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
> 5.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

---

[9]On August 28, 2009, before the ALJ rendered his final decision, Plaintiff's non-attorney representative wrote the following: "I have received a copy of the two consultative exams done on [Plaintiff] and have discussed the results with him and his wife.  We do not wish to do anything further on his case except [Plaintiff] wanted it to be made a part of the file that he had not been drinking that day or the night before or had any beer in over 3 days.  He said he takes a Loratab and a Flexeril at night and that makes him groggy the next day.  Also, he said he did not read all 15 questions, just the ones he could.  He said the doctor told him to just read the ones he could."  (Tr. 205).  Presumably, these comments refer to Dr. D'Ilio's report.

(citations and footnotes omitted).[10]  A finding that a claimant "is disabled or not disabled at any

point in the five-step process is conclusive and terminates the . . . analysis." *Harrell*, 862 F.2d at

475.

### THE ADMINISTRATIVE LAW JUDGE'S ANALYSIS IN THIS CASE

After a hearing upon remand, and considering the testimony and record, the ALJ rendered

his decision on October 8, 2009.  (Tr. 6-17).  At step one of the five-step evaluation, the ALJ

found that Plaintiff had not engaged in any substantial gainful activity since May 24, 2006, the

date of his application for benefits.  At step two, he found that Plaintiff suffers from the following

severe impairment: arthritis.  (Tr. 11).

At step three, the ALJ determined that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments in 20

C.F.R. Part 4, subpart P, Appendix 1.  (Tr. 11).  Next, the ALJ assessed Plaintiff's Residual

Functional Capacity ("RFC"),[11] and found that he retained the capacity to perform the full range

of medium work as defined in 20 C.F.R. § 416.967(c).[12]  In making this determination, the ALJ

considered all of the Plaintiff's symptoms and the extent to which they can be reasonably accepted

---

[10]20 C.F.R. § 404.1520 sets forth the five-step sequential analysis applicable to an
application for a period of disability or disability insurance benefits (or both).  The same five-step
sequential analysis for SSI is set forth in 20 C.F.R. § 416.920.

[11]"Residual functional capacity" is defined in the Regulations as the most an individual
can still do despite the physical and/or mental limitations that affect what the individual can do in
a work setting.  20 C.F.R. § 416.945.

[12]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting
or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine
that he or she can also do sedentary and light work."  20 C.F.R. § 416.967(c).

as consistent with the objective medical evidence and other evidence,[13] and also considered the opinion evidence.[14]  (Tr. 12).  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the RFC assessment and did not preclude work activity.  (Tr. 13, 15).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence.  *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).  To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established."  *Id*. (citations omitted).  However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision."  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted).  Conflicts in the evidence are for the Commissioner, not the courts, to resolve.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  A court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision.  *Harrell*, 862 F.2d at

---

[13]*See* 20 C.F.R. § 416.929 and SSRs 96-4p, 96-7p.

[14]*See* 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

475.  If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders*, 914 F.2d at 617.  Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

## THE ISSUES

Plaintiff raises three issues for this Court to review: 1. the Commissioner's decision should be reversed because the ALJ's RFC failed to include Plaintiff's mental limitations; 2. the Commissioner's decision should be reversed because the ALJ's holding that Plaintiff has the RFC to perform a full range of medium work is not supported by the substantial medical evidence as the ALJ failed to consider the symptoms and limitations of Plaintiff's severe hand pain; and 3. the Commissioner's decision should be reversed because the ALJ should have taken VE testimony due to the existence of non-exertional limitations such as pain and psych limitations.  The Court will discuss these in turn.

## 1.

Plaintiff relies exclusively on the consultative examination report of Dr. D'Ilio to support his argument concerning the ALJ's alleged failure to include Plaintiff's "mental limitations" in his hearing decision.  It is important to keep in mind that part of the Appeals Council's remand concerned Plaintiff's literacy.

While it is true that Dr. D'Ilio made findings that could be interpreted to be favorable to Plaintiff, he also expressed opinions unfavorable to Plaintiff.  The ALJ clearly considered Dr. D'Ilio's consultative evaluation.  The fact that the ALJ did not emphasize or rely on the portions

of the evaluation desired by Plaintiff is of little consequence. This Court will not reweigh the evidence. *See Harrell*, 862 F.2d at 475. Moreover, conflicts in the evidence are for the Commissioner, not the courts to resolve. *See Selders*, 914 F.2d at 617.[15] This ground is without merit.

### 2.

In assessing Plaintiff's RFC, the ALJ found that Plaintiff retained the capacity to perform the full range of medium work which he identified in his decision "as lifting no more than fifty pounds at a time, sitting for approximately six hours out of an eight-hour workday and walking and standing a total of no more than six hours of an eight-hour workday." (Tr. 16). *See supra* n. 12. However, the two sections he cited in support of this conclusion, 20 C.F.R. § 404.1567(a) and § 416.967(a), actually define sedentary work.[16] (Tr. 16).

Plaintiff's claimed error deals with his hand pain only. The record indicates that Plaintiff rarely mentioned hand pain in his submissions to the Social Security Administration. Examples of this are: Request for Reconsideration (Tr. 97) ("I have had several severe injuries that prevent[] me from working or performing most physical activities."); Request for Hearing by ALJ (Tr. 105)

---

[15]Indeed, consistent with Dr. D'Ilio's findings, the ALJ found "that there is not sufficient evidence to support [Plaintiff's] allegation of illiteracy, but in giving him the benefit of the doubt his residual functional capacity has precluded skilled work." (Tr. 16).

[16]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Subsection (b) of these sections defines light work and provides that "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

("I am unable to work due to broken collarbone, problems with neck, arthritis, both legs broken."); Request for Review of Hearing Decision/Order (Tr. 128) ("I am not able to work.  I can't read or write.  Logging is the only work I have done.  I am now 52 years old."); Request for Review of Hearing Decision (Tr. 4) ("I am not able to work because of all the injuries I have . . . had.  My reading is very limited and I can write my name.").  The medical records show restrictions to parts of his hand, but less so with respect to pain, and the ALJ considered his degenerative joint disease in general.

"[A]n ALJ's assessment of a claimant's credibility is accorded great deference."  *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000); *see also Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995) (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)) (stating that the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly").  However, "an ALJ's unfavorable credibility evaluation of a claimant's complaints of pain will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain."  *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988) (citation omitted).

Here, the ALJ stated specific reasons for discounting Plaintiff's credibility.  On the issue of the condition of Plaintiff's hands alone, the undersigned is of the opinion that the ALJ's finding is supported by substantial evidence in the record.[17]  He did not ignore the conditions of Plaintiff's

---

[17]Plaintiff relies in part on the ALJ's observation at the second hearing that Plaintiff's hands "look like they're a little twisted a little bit."  (Tr. 24).  This was followed with questions:  "What's wrong with your hands?  What do you think is wrong with them?"  Answer:  "Well, I

hands, either generally (degenerative joint disease) or specifically.  Where the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed.  *Selders*, 914 F.2d at 617.  This issue does not warrant reversal.

**3.**

Plaintiff's third issue deals with the ALJ's failure to take testimony from a vocational expert on certain subject matter.  It is important to keep in mind that this matter was before the ALJ on remand after an initial hearing and unfavorable decision.  The remand language is quoted *supra* at pp. 2-3.  A vocational expert appeared at the hearing after remand, but was asked only one question: "Now let me change focus here for just a moment.  And, Ms. Hudson, what we have here in terms of past work?"  The answer was: "I don't believe there's been any employment since 1994.  At that time he worked as a saw hand, which is listed at the heavy level.  And it's the level of –" (Tr. 24).[18]

An ALJ "*shall* take any action that is ordered by the Appeals Council and *may* take any action that is not inconsistent with the Appeals Council's remand order."  20 C.F.R. §§ 404.977(b), 416.1477(b).  *See also Partin v. Commissioner of Social Security*, 2009 WL 3615704, at *4 (N.D. Miss. 2009).  The undersigned cannot ignore that the ALJ did not obtain supplemental evidence from a vocational expert as provided in the remand order, and there is no sufficient explanation in the record why he did not.  The remand language does not leave room for an option

---

hurt down that shoulder to my neck.  Now I'm hurting."  (Tr. 24).

[18]This response was addressed in the ALJ's decision: "The vocational expert classified the claimant's past work as heavy exertionally which is beyond [h]is determined residual functional capacity for medium work.  Accordingly, the claimant is unable to perform his past relevant work."

to not call a vocational expert to elicit certain testimony.

*Partin* is instructive in several ways.  In that case, the ALJ issued an unfavorable decision which was appealed to the Appeals Council, which remanded for further proceedings, and the ALJ[19] issued a second unfavorable decision for which the Appeals Council denied a request for review.  This case is in a similar posture.

Also in *Partin*, "[a]lthough the ALJ acknowledged at the second hearing that the case was before him on remand from the Appeals Council, he did not mention the remand or any of the directives provided by the Order of Remand in his 45-page opinion."  2009 WL 3615704, at *1. The remand order before this Court is quite specific.  (Tr. 90-92).  The instructions issued were introduced with the words "[u]pon remand the Administrative Law Judge *will*: . . ."  (Emphasis supplied).

> At the hearing in this matter, the ALJ stated:
>
> Now this is a remand case from a decision that was my decision.  And my recollection, I just looked it up very quickly, I think the RFC that I had at the time was light, unskilled–semi-skilled, which precluded work, but allowed for other work.  And that decision it has been successfully challenged with the remand in part wanting some additional information.  And I don't know that we have–they didn't order it, but they suggested it.  And I don't have a way of really providing with what they're–and we'll have to talk about that and see what we can do about it.  Sometimes we just wait for information to come in.  And maybe we can look at Dr. Seng [phonetic], and maybe that will satisfy them.  If it doesn't, we might have to get some thing else.  One of the things they talk about is the–it's unclear as to the cognitive ability . . .

(Tr. 20-21).  In his second written decision, the ALJ acknowledged: "In its remand order, the Appeals Council *directed* the undersigned to obtain additional evidence concerning the claimant's literacy, degenerative disc disease, degenerative joint disease, and history of fracture to both legs;

---

[19]Unlike here, the ALJ in *Partin* after remand was different than the one who issued the original decision.

*and to obtain supplemental evidence from a vocational expert*." (Tr. 9) (emphasis added). As

mentioned above, the ALJ asked the vocational expert one question.

In the instant case, the Commissioner argues that it was unnecessary for the ALJ to obtain

vocational expert testimony because he found that Plaintiff had no non-exertional limitations to

the RFC, citing to pages 11 and 12 of the transcript. The record is not so clear.

Taken alone, not following the Appeals Council's remand instructions to call a vocational

expert may be harmless error. However, the Court must also take into consideration the following

principles:

> The burden of showing by substantial evidence that a person who can no longer
> perform his former job can engage in other substantial gainful activity is in almost all
> cases satisfied only through the use of vocational expert testimony. While in exceptional
> cases testimony by a vocational expert may not be necessary to satisfy the
> [Commissioner's] burden of proving that a prima facie disabled claimant can do other
> work available in the national economy, . . . the general rule is that such testimony is
> required . . . It is only when the claimant can clearly do unlimited types of light work . . .
> that it is unnecessary to call a vocational expert to establish whether the claimant can
> perform work which exists in the national economy. In such a case, since medical
> evidence has established that the claimant can do virtually any type of light work, and
> since the ALJ can take administrative notice that jobs requiring only light work exist in the
> economy, . . . vocational expert testimony that the claimant is able to perform jobs which
> exist in the national economy is the equivalent of putting two and two together, . . . and is
> therefore unnecessary. On the other hand, when the claimant can only perform a limited
> scope of light work, competent evidence presumably testimony by a vocational expert is
> necessary to show that an individual with the claimant's limited ability can nevertheless
> engage in substantial gainful activity by performing work which exists in the national
> economy . . . In other words, when a claimant can perform any type of light to moderate
> physical activity, administrative notice that jobs requiring such activities exist makes
> vocational expert testimony unnecessary; . . . however, when a claimant can perform only
> limited types of light to moderate activity, a vocational expert must be called to testify that
> jobs requiring only the activities which the claimant can perform exist in the national
> economy.

*Ferguson v. Schweiker*, 641 F.2d 243, 247-48 (5th Cir. 1981), *overruled on other grounds,*

*Johnson v. Heckler*, 767 F.2d 180 (5th Cir. 1985) (citations, internal quotations, and footnote

omitted). *See also Hearne v. Barnhart*, 111 F. App'x 256, 257-58 and *fn. (5th Cir. 2004) (citing *Ferguson* and noting that it was not clear if the ALJ determined that claimant was able to perform full range of unskilled sedentary work or if there were limitations); *Moore v. Sullivan*, 983 F.2d 231, 1992 WL 400375, at *3-*4 (5th Cir. 1992) (distinguishing *Ferguson*; claimant had no exertional limitations to perform specified work); *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (ALJ made finding that other work was available that claimant could perform).

In the instant case, it appears that the ALJ found within the space of four paragraphs (Tr. 16) that Plaintiff has "limitations which would preclude him from perform[ing] work beyond an exertional level of *light*," that Plaintiff's arthritis "results in limitations which reduce his residual functional capacity to a *medium* level of exertion," and then for this latter proposition cited sections applicable to *sedentary* work. (Emphasis added). In his original decision prior to the remand, the ALJ found that

> [t]he regulations show that there are approximately 1,600 separate sedentary and light unskilled occupations occupations that can be identified in eight broad occupational categories with each occupation representing numerous jobs in the national economy. The addition of semi-skilled jobs would only increase this number which clearly shows the existence of a significant number of jobs.

(Tr. 87). The decision after remand is silent on this topic despite the directive of the Appeals Council.

The Commissioner does not discuss any of the above Fifth Circuit authority in his brief. The Commissioner cites a Seventh Circuit case for the proposition that an ALJ is only required to incorporate into his RFC and hypotheticals those impairments and limitations that he accepts as credible. *Schmidt v. Astrue*, 496 F.3d 833 (7th Cir. 2007). However, in *Schmidt*, the ALJ actually posed appropriate hypothetical questions to the vocational expert and the vocational expert

17

testified that the claimant could perform a significant number of jobs.  *Id.* at 846.[20]

In the case *sub judice*, despite the instruction from the Appeals Council, the vocational expert was not asked any hypothetical questions.  With an opportunity to further develop the record on this issue, the outcome may be substantially affected, especially considering that the ALJ's opinion is unclear and perhaps contradictory as to what exertional level of work Plaintiff may perform.[21]

Under these circumstances, this Court is of the same opinion as the one in *Partin*: "that despite the great detail of the ALJ's decision, his failure to follow the specific directive[] of the Appeals Council and to develop the record as required by applicable regulations requires remand." This Court is "mindful that the ALJ's decision may not ultimately be erroneous."  *Id*. at *6.  In order to allow a just determination of Plaintiff's application for benefits and for this Court to make an informed decision, this Court finds that the testimony from the vocational expert originally directed by the Appeals Council is still necessary.  Moreover, the ALJ should clarify Plaintiff's exertional limitations, i.e., sedentary, light, or medium.  The record must be developed accordingly.[22]

---

[20]Interestingly, in the other case cited by the Commissioner on this issue, *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983), the Court found that the ALJ violated Social Security regulations and raised the prospect that a vocational expert might be required to testify.

[21]As noted above, the ALJ's decision mentions that Plaintiff can perform medium work, is limited to light work, and references sedentary work.  *See* Tr. 16 and pp. 12, 17 *supra*.

[22]This Court acknowledges that its ability to review the failure by an ALJ to comply with remand instructions from the Appeals Council has been questioned.  *See Magee v. Astrue*, 2011 WL 1226011, at *8 (S.D. Miss. 2011).  Nevertheless, the Court in *Magee* found that the ALJ essentially followed the remand instructions.  Moreover, the Report and Recommendation adopted in *Magee* allowed for the possibility of error under the application of the correct legal standard prong of the standard of review, observing that "to obtain remand because of an ALJ's

## CONCLUSION/RECOMMENDATIONS

Based on the foregoing, it is the recommendation of the undersigned that the Commissioner's [10] Motion to Affirm be **DENIED**.  It is further recommended that the Plaintiff's [9] brief, construed as a motion for reversal or remand of the Commissioner's decision, be **GRANTED IN PART** and **DENIED IN PART**.  It should be granted to the extent that it seeks a remand to the Commissioner.  Upon remand, the Commissioner shall develop the record consistent with the Appeals Council's original remand instructions, including obtaining certain testimony from a vocational expert and clarification of the Plaintiff's exertional limitations.  The Commissioner should specifically address the application of the additional information required by those instructions, and issue a decision based on the supplemental record.  Plaintiff's motion should be denied to the extent that it seeks reversal or any other relief related to the Commissioner's decision.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules, any party within fourteen (14) days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge, and the opposing party.  The District Judge at the time may accept, reject, or modify, in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and

---

failure to comply with an Appeals Council order, Plaintiff must demonstrate that the ALJ's omission substantially affected the outcome."  *Magee v. Astrue*, 2010 WL 6369942, at *13 (S.D. Miss. 2010).

recommendations contain within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  28 U.S.C. § 636(b)(1); *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).[23]

THIS the 21st day of December, 2011.

s/Michael T. Parker
United States Magistrate Judge

---

[23]*Douglass* referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.